UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>for the use and benefit of<br>**B&S EQUIPMENT CO., INC., ET AL.,**<br>    Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1373** |
| **NORTH AMERICAN SPECIALTY<br>INSURANCE COMPANY, ET AL.,**<br>    Defendants | **SECTION: "E" (3)** |

## ORDER AND REASONS

Defendants North American Specialty Insurance Co. ("NASIC") and Quality First Construction, LLC *d/b/a* Quality First Marine ("Quality First") (collectively, "Defendants") have filed a Motion to Dismiss Count I of Plaintiffs' Complaint.[1] Plaintiffs the United States of America, for the use and benefit of B&S Equipment Co., and B&S Equipment Co. ("B&S") (collectively, "Plaintiffs") have filed an opposition.[2] Defendants have filed a reply.[3] For the following reasons, the Defendants' motion to dismiss is **DENIED**.

## BACKGROUND[4]

This case arises from work by the U.S. Army Corps of Engineers ("USACE") on the Gulf Intracoastal Waterway.[5] The USACE solicited bids for a contract to be awarded jointly by the U.S. Department of Defense, through the USACE, and the Small Business

---

[1] R. Doc. 19.
[2] R. Doc. 26.
[3] R. Doc. 30.
[4] The background facts are taken from the allegations in Plaintiffs' complaint. R. Doc. 1.
[5] *Id.* at ¶ 7.

Administration.[6] Carter's Contracting Services, Inc. ("Carter's) submitted the winning bid and entered into Contract No. W91278-17-D-0064 (the "Prime Contract") with the USACE.[7] The Prime Contract was subject to statutes and regulations that required Carter's to subcontract with small businesses that were similarly situated, with self-performance requirements.[8]

Carter's subsequently entered into a subcontract with Fish Tec, Inc. ("Fish Tec") for a portion of the work to be performed in East Bay and Lake Wimico in Franklin County, Florida.[9] Fish Tec, in turn, entered into a subcontract with Defendant Quality First to perform some of dredging work for this project in Franklin County.[10] Defendant NASIC as surety issued a subcontract payment bond on behalf of Quality First, as principal, to Fish Tec, as obligee, for the protection of those supplying material or labor in furtherance of the work outlined in the contract between Fish Tec and Quality First.[11]

Quality First entered into a subcontract with B&S to provide equipment and vessels, among other things, for the work in Franklin County.[12] B&S alleges it completed the required work under the subcontract, but Quality First has not paid B&S all of the payments due.[13]

In Count I of the complaint, Plaintiffs sue NASIC and Quality First on the NASIC subcontract payment bond, which they label a Miller Act bond.[14] In Count II of the

---

[6] *Id.* at ¶¶ 7-8.
[7] *Id.* at ¶ 9.
[8] *Id.* at ¶¶ 10-11.
[9] *Id.* at ¶¶ 12-13.
[10] *Id.* at ¶ 14.
[11] *Id.* at ¶ 44; *see also* R. Doc. 1-5 (the bond).
[12] R. Doc. 1 at ¶¶ 16-43. The parties dispute the exact terms of this subcontract; however, that dispute is not relevant for the current motion. This case was originally filed in the United States District Court for the Northern District of Florida before the parties consented to transfer to this Court. R. Doc. 16.
[13] *Id.* at ¶¶ 41-43, 46.
[14] *Id.* at ¶¶ 47-54.

complaint, B&S sues Quality First for breach of maritime contract.[15] Defendants have filed a motion to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6).[16]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[20] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[21]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[22] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[15] R. Doc. 1 at ¶¶ 4, 55-62.
[16] R. Doc. 19.
[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[19] *Id.*
[20] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[21] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[22] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[23] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[24]

## LAW AND ANALYSIS

### I. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the United States Constitution or by Congress.[25] Therefore, before reaching the merits of Plaintiffs' claims, the Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[26]

First, Plaintiffs allege there is 28 U.S.C. § 1331 federal question jurisdiction because this action is based on a Miller Act bond.[27] Second, Plaintiffs allege there is 28 U.S.C. § 1333 admiralty jurisdiction because the contract between Quality First and B&S is a maritime contract.[28]

#### A. There Is No Federal Question Jurisdiction Because Plaintiffs Have Not Sued on a Miller Act Bond.

"The purpose of the Miller Act is 'to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings.'"[29] To that end, 40 U.S.C. § 3133(b)(1) provides:

---

[23] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[24] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[25] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[26] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).
[27] R. Doc. 1 at ¶ 4.
[28] *Id.*
[29] *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 220 (5th Cir. 2012) (quoting *United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 31 (1st Cir. 1997)).

4

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

"The Miller Act itself does not explicitly mention that a bond is necessary to maintain jurisdiction under the statute. Federal case law, however, has established that a claim under the Miller Act cannot be maintained without it."[30] Section 3131(b) of the Miller Acts provides the "[t]ype of bonds" that "a person must furnish to the Government" before certain federal contracts are awarded.[31] A person must furnish 1) a "performance bond . . . for the protection of the Government," and 2) a "payment bond . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract."[32]

Defendants argue the payment bond issued by NASIC in this case is not a Miller Act bond under 40 U.S.C. § 3131(b) because a Miller Act bond must be posted by the general contractor in favor of the United States as the obligee.[33] Plaintiffs argue the cases requiring Miller Act bonds to list the United States as the obligee incorrectly interpret the Miller Act, and that the 2002 amendments to the Miller Act no longer require the general contractor to post the bond.[34] In addition, these cases, Plaintiffs argue, address only payment bonds under § 3131(b) while § 3133 also authorizes civil actions for bonds issued under § 3131(e), which does not have the same requirement that the bond be furnished to

---

[30] *Arena*, 669 F.3d at 220.
[31] 40 U.S.C. § 3131(b).
[32] *Id.* § 3131(b)(1), (2).
[33] R. Doc. 19-1 at 3-4; R. Doc. 30 at 3-6.
[34] R. Doc. 26 at 7-11.

5

the United States.[35]

"A subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a *general contractor's* payment bond."[36] Accordingly, Courts have interpreted the requirement in § 3131(b) that the payment bond be "furnish[ed] to the Government"[37] to mean that a Miller Act bond must list the United States as the obligee.[38] For example, in *Asbestos Abatement Contractors, Inc. v. Home Guard Envoronmental Restoration Services, Inc.*, this Court held that a payment bond posted by a subcontractor listing the general contractor as the sole obligee was not a Miller Act bond because "the plain language of the statute makes clear that the Miller Act provides a cause of action only on the payment bond between the *general contractor* and the *United States*."[39] The Court reasoned "[s]ection 3131(b) requires a payment bond between a contractor and the government" and "the right to bring a civil action under section 3133(b) is 'on the payment bond' required by section 3131(b)."[40] Similarly, in *United States ex rel. Tri-State Road Boring, Inc. v. U.S. Fidelity & Guaranty Co.*, this Court held a bond posted by a subcontractor listing the general contractor Raytheon as the sole obligee was not a Miller Act bond because "the bond at issue was not furnished to the United States, but to

---

[35] *Id.* at 7, 9-10.
[36] *Arena*, 669 F.3d at 220; *see also Asbestos Abatement Contractors, Inc. v. Home Guard Env't Rsetoration Servs., Inc.*, No. 11-3118, 2012 WL 1664549, at *5 (E.D. La. May 11, 2012) (emphasis added).
[37] 40 U.S.C. § 3131(b).
[38] *See, e.g.*, *Asbestos Abatement*, 2012 WL 1664549, at *4-5 ("[T]he plain language of the statute makes clear that the Miller Act provides a cause of action only on the payment bond between the general contractor and the United States."); *United States ex rel. Tri-State Road Boring, Inc. v. U.S. Fid. & Guar. Co.*, 959 F. Supp. 345, 347 (E.D. La. 1996) (holding a bond listing the general contractor Raytheon as sole obligee "was not furnished to the United States, but to Raytheon"); *United States ex rel. Capps v. Fid. & Deposit Co. of Md.*, 875 F. Supp. 803, 808 (M.D. Ala. 1995) ("By statute, the payment bond must run to the benefit of the United States."); *United States ex rel. Acme Furnace Fitting Co. v. Fort George G. Meade Def. Hous. Corp. No. 1*, 186 F. Supp. 639, 644 (D. Md. 1960) ("The requirement that Miller Act bonds must be furnished 'to the United States' has been held . . . to mean that in the case of such bonds the United States shall be named as sole obligee."); *cf. Arena*, 669 F.3d at 220 ("A subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond.").
[39] *Asbestos Abatement*, 2012 WL 1664549, at *1, 4 (emphasis added).
[40] *Id.* at *4.

Raytheon."[41]

Plaintiffs argue the 2002 amendments recodifying the Miller Act removed the requirement that the general contractor must furnish the bond. The prior version of the Miller Act stated, "Before any contract . . . is awarded to any person, *such person* shall furnish to the United States the following bonds."[42] The current, amended version of the Miller Act states, "Before any contract . . . is awarded . . . , *a person* must furnish to the Government the following bonds."[43] Plaintiffs argue this change reflects Congress's intent that the person awarded a federal contract—*i.e.*, the general contractor—is no longer the only person who may furnish a Miller Act bond; rather the change from "such person" to "a person" means any subcontractor may furnish a Miller Act bond. Plaintiffs point to no cases recognizing this broader definition of a Miller Act bond. In fact, courts after the 2002 amendment have continued to allow Miller Act claims only on bonds furnished by the general contractor.[44] The Court does not find this minor change in the wording of the statute has overruled the well-settled principle that parties may sue only on the general contractor's bond under the Miller Act.

Plaintiffs further argue the Miller Act also authorizes civil suits for bonds issued under § 3131(e), which does not require the bond be furnished by the general contractor listing the United States as the obligee. Section 3131(e) provides, 'This section does not limit the authority of a contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases, specified in subsection (b)."[45] However, § 3133, which grants the right to bring a civil action under the Miller Act,

---

[41] *Tri-State Road*, 959 F. Supp. at 347.
[42] 40 U.S.C. § 270a (repealed 2002) (emphasis added).
[43] 40 U.S.C. § 3131(b).
[44] *See, e.g.*, *Arena*, 669 F.3d at 220; *Asbestos Abatement*, 2012 WL 1664549, at *5.
[45] 40 U.S.C. § 3131(e).

7

authorizes actions only on "a contract for which a *payment bond* is furnished under section 3131 of this title."[46] In § 3131, the only reference to a "payment bond" is subsection (b)(2), which is labelled "Payment bond" and defined as a bond furnished by the general contractor to the United States[47] Accordingly, Miller Act bonds are bonds furnished only under § 3131(b). Bonds furnished under § 3131(e) are not payment bonds under the Miller Act.[48]

For these reasons, the Court finds the bond furnished by Quality First to Fish Tec is not a Miller Act bond. Accordingly, the Court lacks federal question jurisdiction over this action. The Court must determine whether there is any other basis for subject matter jurisdiction in this Court.

### B. The Court Has Admiralty Jurisdiction Over Claims Arising from B&S's Maritime Contract.

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[49] "To invoke admiralty

---

[46] *Id.* § 3133(b)(1).
[47] *Id.* § 3131(b)(2); *see also Asbestos Abatement*, 2012 WL 1664549, at *4 ("[T]he right to bring a civil action under section 3133(b) is 'on the payment bond' required by section 3131(b).").
[48] Indeed, the few courts who have addressed § 3131(e)—or its predecessor before the 2002 recodification, § 270a(c)—have generally found its only purpose was to broaden the Government contracting officer's power to require additional bonds under the Miller Act, as compared to under its predecessor, the Heard Act. *Cf. Irwin v. United States ex rel. Noland Co.*, 122 F.2d 73, 77 (D.C. Cir. 1941) ("[I]t seems to us that the purpose of subsection (c), which does not appear in the Heard Act, was merely to insure that whatever authority the Secretary had prior to the passage of the Miller Act to require security of persons dealing with the United States in matters not covered by the precise terms of that Act, was not taken away by anything contained in the Act. Very clearly, subsection (c) does not of itself authorize any bonds to be taken under the Miller Act."), *overruled on other grounds by* 316 U.S. 23 (1942); *United States ex rel. James E. Simon Co. v. Ardelt-Horn Constr. Co.*, 316 F. Supp. 254, 262 (D. Neb. 1970) ("[T]he Miller Act provides that it shall not be construed to limit the authority of the contracting officer to require other security in addition to those specifically mentioned. The total amount of the two bonds required under the Miller Act may exceed, therefore, the amount of the single bond required under the Heard Act. Beyond this, the Heard Act specifically limited the suppliers of labor and material to whatever remained after the United States was satisfied in full. The Miller Act, on the other hand, gives to the suppliers of the labor and materials the full amount of the payment bond, which will amount to at least one-half the full contract price, and more if the contracting officer requires further security for them.").
[49] 28 U.S.C. § 1333(1).

jurisdiction in a contract dispute, the underlying contract must be a maritime contract."[50] "A maritime contract is '[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment.'"[51] "To determine whether a contract is maritime, the courts look at the subject matter of the contract as well as judicial precedent."[52]

B&S contracted with Quality First to provide two spud barges and two excavators for Quality First's dredging work on the Gulf Intracoastal Waterway in Franklin County, Florida.[53] Courts have held a dredging contract on a navigable waterway is generally a maritime contract.[54] For example, in *Misener Marine Construction, Inc. v. Norfolk Dredging Co.*, the United States Court of Appeals for the Eleventh Circuit held a contract for the dredging of a port was maritime contract.[55] The court reasoned "[t]he primary objective of the contract between [the parties] was dredging a navigable waterway in a port that services international and national commerce," and thus "[t]here is no doubt that the work contracted for and performed by [the dredging company] had a direct effect on maritime services and commerce." Similarly, in this case the parties' objective for B&S's supplying spud barges and excavators was dredging the Gulf Intracoastal Waterway, a navigable waterway that services interstate and international commerce. The work contracted for had a direct effect on maritime commerce and navigation. For

---

[50] *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992).
[51] *Id.* (quoting *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 954 (5th Cir. 1988)).
[52] 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 3:10 (6th ed.), Westlaw (database updated Nov. 2020).
[53] R. Doc. 1 at ¶¶ 16, 19.
[54] *See, e.g., Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (11th Cir. 2010); *cf. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock. Co.*, 513 U.S. 527, 540 (1995) (holding "repair or maintenance work on a navigable waterway performed from a vessel," in that case a spud barge, "is substantially related to traditional maritime activity" for purposes of maritime tort jurisdiction). *See generally* Schoenbaum, *supra* note 52, § 3:10 ("[T]he types of contracts that invoke admiralty jurisdiction are well established. The list includes . . . certain dredging contracts.").
[55] *Misener Marine,* 594 F.3d at 837.

these reasons, the Court finds the contract between B&S and Quality First is a maritime contract, and the Court has admiralty jurisdiction over B&S's claims.[56]

## II. The Court Construes Count I as a Claim on the NASIC Payment Bond.

In Count I B&S makes a claim against the NASIC payment bond: "As a result of [Quality First's] inability, refusal, or unwillingness to pay pursuant to the terms of its contract with B&S, NASIC is jointly and severally liable to B&S under the terms of the Subcontract Payment Bond."[57] For the reasons stated in section I.A above, the bond issued by NASIC is not a Miller Act bond.[58]

Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice." "[T]he district court has a duty . . . to read the complaint liberally and determine whether the facts set forth justify it in assuming jurisdiction on grounds other than those pleaded."[59] "[U]nless it affirmatively appears, not from what is omitted to be alleged, but from what is actually alleged, that there is no valid claim or defense," it is proper to allow improperly pleaded claims to proceed under certain circumstances.[60] "[P]articular situations may not require that the specific legal theory be identified," and it may be enough that "at least some notion of the grounds justifying the remedies sought in the proceedings . . . appear[s]."[61]

While the NASIC payment bond is not a Miller Act bond, reading the complaint

---

[56] 28 U.S.C. § 1333(1).
[57] R. Doc. 1 at ¶ 52.
[58] Even if the NASIC payment bond were a Miller Act bond, the Miller Act does not extend its protections to third-tier contractors like B&S. *See, e.g.*, *Double R & J Trucking Serv., Inc. v. Patton Installations of Fla., L.L.C.*, No. 14-2234, 2015 WL 2452343, at *2 n.20 (E.D. La. May 21, 2015) (first citing *United States ex rel. Powers Regulator Co. v. HartfordAccident & Indem. Co.*, 376 F.2d 811, 811-12 (1st Cir. 1967); and then citing *Faerber Elec. Co. v. Atlanta Tri-Com, Inc.*, 795 F. Supp. 240, 243 (N.D. Ill. 1992)).
[59] *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980).
[60] *See Mims v. Cent. Mfrs. Mut. Ins. Co.*, 178 F.2d 56, 59 (5th Cir. 1949).
[61] *See Ocaso, S.A., Compañia de Seguros y Reaseguros v. P.R. Mar. Shipping Auth.*, 915 F. Supp. 1244, 1253 (D.P.R. 1996).

liberally, in Count I B&S has affirmatively stated the grounds for a claim against Quality First and NASIC on the payment bond over which the Court has subject matter jurisdiction. Accordingly, the Court construes Count I of the complaint as a claim against Quality First and NASIC to recover under the NASIC payment bond, and Count I is not dismissed.

## CONCLUSION

**IT IS ORDERED** the Motion to Dismiss Count I of Plaintiffs' Complaint[62] filed by Defendants North American Specialty Insurance Co. and Quality First Construction, LLC *d/b/a* Quality First Marine is **DENIED**.

New Orleans, Louisiana, this 19th day of October, 2021.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[62] R. Doc. 19.